# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN  DIVISION

| | | |
|---|---|---|
| **BRICE BUILDING COMPANY, INC,** | ] | |
| | ] | |
| **Petitioner,** | ] | |
| | ] | |
| **v.** | ] | **CV-10-BE-0091-S** |
| | ] | |
| **WILLIAM DEL LEE, et al.,** | ] | |
| | ] | |
| **Respondents.** | ] | |
| | ] | |

### CONSOLIDATED WITH

| | | |
|---|---|---|
| **WILLIAM DEL LEE, et al,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **CV-10-BE-0476-S** |
| | ] | |
| **BRICE BUILDING COMPANY** | ] | |
| **INC.,** | ] | |
| **Defendant.** | ] | |
| | ] | |

### MEMORANDUM OPINION

This contractual dispute comes before the court on Petitioner "Brice Building Company, Inc.'s Petition to Confirm Final Arbitration Award" (doc. 1) and Respondents' "Motion to Transfer or, Alternatively, to Stay Confirmation and Supporting Memorandum of Law." (Doc. 5). Because the issues raised in both motions involve the same facts, the court considers them together.  The parties thoroughly briefed these matters and the court held a hearing on August 26, 2010.  For the reasons stated on the Record and summarized below, the court finds that the Respondents failed to establish any of the statutory grounds for vacatur; therefore, the court

GRANTS the Petition to Confirm and DENIES the Motion to Vacate or Stay, except to the extent stated below.  The Motion to Transfer is MOOT.[1]

I.      Facts[2]

The relationship between Petitioner Brice Building Company, Inc. and Respondents Landmark General Contractors Inc. and its two shareholders, William Del Lee and Talmadge E. "Bo" Lee, began in 2003.  The Lees approached Brice about joining them on a project to build Harbor Village, a condominium development in Panama City, Florida.  Brice and Landmark entered into a joint venture agreement in August 2003 in which they committed to share profits and losses 65% to Brice and 35% to Landmark.  For various reasons, losses far exceeded profits by almost $8,000,000.  Landmark refused to pay its 35% share, with the Lees taking the position that no joint venture ever existed, or if it did, it ceased to exist in February 2004.  (*See* Interim Order, Doc. 1-6, p. 2)

The litigation between the parties began in 2006 when Brice filed suit against Landmark and the Lees in the Circuit Court of Jefferson County, Alabama for refusing to pay their share of losses.  The original Complaint alleged causes of action against Landmark and the Lees for breach of contract, breach of fiduciary duty, fraud, fraudulent suppression, deception, and negligence.  (Doc. 20-1.)  In response, Landmark and the Lees filed a motion for stay and for

---

[1] The Motion to Transfer sought transfer of this case to the Northern District of Florida, where a prior action filed by Landmark and the Lees was pending against Brice.  That action, however, has been transferred to this district and consolidated with the action filed by Brice.  *See Lee v. Brice*, 2:10-00476-KOB.  Counsel confirmed at the hearing the mootness of the motion.

[2] For a full statement of facts of this saga, the reader is directed to the hundreds of pages of briefs and exhibits filed in this case.  What follows recites merely highlights to provide the context for the decision.

order compelling arbitration.  (*See* Doc. 1-3.)  In that motion, supported by the Affidavit of

William Del Lee, the Respondents admitted entering a joint venture agreement with Brice and

that the Agreement required arbitration pursuant to paragraph 22.  That paragraph of the

Agreement reads:

> . . . All disputes (except with regard to any matters relating or
> pertaining to, or necessary for the performance of, the Construction
> Contract, which shall be decided by the Managing Party and/or the
> Brice Project Manager) which cannot be settled amicably by
> negotiation among the Parties shall be submitted by the Parties to
> arbitration under the Construction Industry Rules of the American
> Arbitration Association in accordance with its rules.  The
> applicable laws under which such arbitration shall be held shall be
> the laws of the State of Alabama, except to the extent the Federal
> Arbitration Act is applicable, and such arbitration shall be held in
> Birmingham, Alabama.  This provision to arbitrate shall be
> specifically enforceable in any Court of competent jurisdiction.

After the parties reached a "tolling agreement," dismissed the Complaint, and

unsuccessfully tried to resolve the dispute, Brice filed its Demand for Arbitration with the AAA

on April 30, 2008.  The Demand alleged the same causes of action as the state court Complaint,

including the various allegations of fraud against the Lees personally.  In their Answer, the Lees

and Landmark admitted jurisdiction of the AAA pursuant to their tolling agreement and the Joint

Venture Agreement.  (Doc. 20-6, ¶ 5.)  The Lees did not contest the scope of the arbitration or

jurisdiction over them personally until after Brice amended its Demand of Arbitration in

December, 2008.  The amended Demand added, as additional bases for liability against the Lees

and Landmark, claims of unjust enrichment and piercing the corporate veil.  Specifically as to the

piercing the corporate veil count, Brice alleged that "Landmark, Del Lee, and Talmadge Lee have

perpetrated a fraud against Brice by, among other things, transferring capital and assets out of

Landmark in order to avoid paying its share of the losses. . . ."  (Doc. 20-7, ¶ 74.)   The Lees then filed a Motion to Dismiss the claims in the amended Demand against them, alleging for the first time that neither the tolling agreement nor the Joint Venture Agreement conferred jurisdiction over them personally because, inter alia, they were not parties to the Joint Venture Agreement, that the tolling agreement they had entered only applied to the six claims that were then pending in Jefferson County court, and that Talmadge Lee did not sign the tolling agreement.  (Doc. 20-8.)  The Arbitration Panel denied the Motion to Dismiss.  (Doc. 20-9.)

On November 4, 2009, the Panel issued its Interim Award in which it concluded that "Landmark is liable for its share of the loss and that the Lees are liable for a portion of the loss." (Doc. 1-6, p. 1.)  The Interim Award further provided that "Brice is awarded $2,672,181 against Landmark.  Of that amount, Brice is awarded $914,746 against Dell and Bo Lee."  (Doc. 1-6, p. 5.)  The Panel found that Brice was entitled to attorneys fees and costs, but left that issue open for presentation of evidence.  The Panel acknowledged that the Lees challenged its jurisdiction to decide issues related to their personal liability and again rejected that challenge.  Instead, it held "that the Lees have consented to the Panel's jurisdiction and determination of the claims relating to them." (Doc. 1-6, p. 4.)

In discussing the personal liability of the Lees, the Panel found the Lees personally liable to Brice for fraud or fraudulent misrepresentation.  (Doc. 1-6, p. 3.)  It limited the measure of damages against them to "what Brice could have recovered but for the fraud."  That amount, according to the Panel, was the amount the Lees removed from Landmark for their personal benefit to the detriment of Brice: $914,746.  (Doc. 1-6, p. 4.)

The Panel then made the following statement that created a significant bone of

4

contention:

> Because the Panel finds the Lees personally liable as set forth
> above, the Panel *does reach* [sic] the issues of *potential* personal
> liability for unjust enrichment or piercing the Landmark
> Corporation veil.

(Doc. 1-6, p. 4 (italics added).)

The Respondents assert that this paragraph means the Panel *did* reach the claims Brice
asserted in the Amended Demand, to which they objected on jurisdictional grounds.  This
paragraph forms the basis of their argument that the award should be vacated because the
arbitrators exceeded their powers.

Not surprisingly, Brice asserts that the paragraph contains a typographical error in that the
word "not" was omitted.  Brice buttresses its position by noting that the paragraph refers to
"potential" liability for those added claims and that the award contains no discussion or analyses
of those added claims.  It thus argues that the paragraph, read in context of the prior discussion of
the Lees' personal liability for fraud, really means that the Panel did not reach the issues of
additional grounds for liability to which the Lees objected.  To further support its position, Brice
submitted an Order from the Panel dated May 18, 2010, purporting to amend the Interim Order
by inserting the omitted "not."  (Doc. 24-1.)

The Panel also found that Landmark and the Lees are entitled to a credit of 35% of any
amount Brice may recover in its litigation against the project architects.[3]  Brice sued the project

---

[3] The parties had differing views as to whether the offset applied just to Landmark or to
Landmark *and* the Lees.  The Interim Award in one paragraph states that "Landmark" is entitled
to a credit, and in another that "Landmark and the Lees" are entitled to that credit.  (Doc. 1-6,
p.5.)  The Final Award reads: "Landmark and the Lees are entitled to a credit of 35% of any
funds Brice obtains from the architects."  Two out of three references include all Respondents,
and the court will adopt that language in the Final Award.

architects in Florida state court seeking damages it sustained as general contractor.  *See Brice*

*Bldg. Co. v. Ai Design Grp., LLC*, Circuit Court 14th Judicial Circuit, Bay County, FL. No. 08-

2805-CA.  This provision of the award forms the grounds for the Respondents' motion that

confirmation of the arbitration award should be stayed pending resolution of the architects' case.

In January 2010, the Panel issued its Final Award.   In it, the Panel incorporated by

reference its Interim Award.  It then found that "Brice is entitled to an award against Landmark

of $280,000 in attorneys' fees and $102,044 in other costs, which includes the expenses Brice

paid to the American Arbitration Association."  (Doc. 1-1.)  Although the Interim Award twice

provided that Brice was entitled to recover attorneys' fees and costs from Landmark *and* the

Lees,[4] the Final Award states: "Brice is not entitled to an award of fees and expenses against the

Lees individually."   This paragraph also contradicts the penultimate paragraph of the Final

Award that says that administrative fees of AAA "shall be borne entirely by William Del Lee,

Talmadge E. Lee, Landmark"; that the fees and expenses of the arbitrators "shall be borne

entirely by William Dell Lee, Talmadge E. Lee, Landmark"; and that therefore "William Del Lee,

Talmadge E. Lee, Landmark shall reimburse Brice."  (Doc. 1-1.)

The Final Award then concluded: "Brice is awarded $3,054,225 against Landmark *and*

awarded $914,746 against Del and Bo Lee.[5]  Landmark and the Lees are entitled to a credit of

---

[4] "Brice is the prevailing party and thus entitled to recover from Landmark and the Lees
its expenses and costs for the items listed in Paragraph 26 [of the Joint Venture Agreement
"JVA"]. . . .  Brice is awarded its attorneys' fees and costs as provided in Paragraph 26 of the
JVA against Landmark and the Lees."  Doc. 1-6, p.5.

[5] Although the "and" could be read as imposing an additional award of $914,746 against
the Lees, and although Brice took that position at one time, reading the Interim Award along with
the Final Award demonstrates that the Lees' personal liability is for a *portion* of the $3,054,225
awarded against Landmark, and not an additional amount.

35% of any funds Brice obtains from the architects."  (Italics added.)

The $3,054,225 awarded against Landmark comprises the original damage award of $2,672,181 from the Interim Award, plus $280,000 in attorneys' fees, and $102,044 in other costs assessed in the Final Award.  The $914,716 amount against the Lees is the amount awarded in the Interim Award "as a portion of the loss," and "of that amount" awarded against Landmark.

Although not initially raised by the parties, at the hearing the court and counsel could not decipher the meaning of the penultimate paragraph in the context of the Interim Award and the Final Award.  That paragraph reads:

> The administrative filing and case service fees of the AAA, totaling $15,250.00, shall be borne entirely by William Del Lee, Talmadge E. Lee, Landmark.  The fees and expenses of the arbitrators, totaling $94,237.93, shall be borne entirely by William Del Lee, Talmadge E. Lee, Landmark.  Therefore, William Del Lee, Talmadge E. Lee, Landmark shall reimburse Brice Building Company, Inc. the sum of $98,187.93, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Brice Building Company, Inc., upon demonstration by Claimant that these incurred costs have been paid.

This paragraph caused the court and counsel some problems in our efforts to interpret its meaning and to read it consistently with the remaining paragraphs of the Final Award and with the Interim Award, incorporated into it by reference.[6]  As a result of this confusion, the court held

---

[6] This paragraph appears to impose personal liability upon the Lees for costs of arbitration in conflict with the paragraph quoted above, but in accord with the provisions of the Interim Award that found that Landmark *and* the Lees owed Brice for attorneys' fees and costs.  In addition to this inconsistency, the numbers contained in that paragraph cannot be reconciled with the numbers contained elsewhere, or even as represented by counsel at the hearing.  For example, in the prior fees and costs paragraph, the award of $102,044 in costs specifically states that it includes "expenses Brice paid" to AAA.  That amount clearly comprises part of the $3,054,225 award against Landmark.  This confusing paragraph requires Landmark and the Lees to bear "entirely" the $15,000 administrative fee and the arbitrators' fees and expenses of $94,237.93,

a phone conference with counsel on September 2, 2010 to discuss alternative approaches, including the possibility of remanding this matter to the Arbitration Panel to clarify the meaning of this one paragraph.  To avoid further delay, counsel agreed to try to work out a solution, and they succeeded.

The parties stipulated that the Lees are personally liable for $98,187.93 as costs and expenses relating to the Arbitration, but are not liable for attorneys' fees awarded in that proceeding.  The court accepts that stipulation and will fret no more over the significance of the other numbers contained in that paragraph.

As provided in the Joint Venture Agreement, Brice filed its petition for judicial confirmation of the award in this court on January 15, 2010.  The Respondents countered with their motion to vacate or stay.

II.     Legal Standard: Confirm or Vacate?

The parties agree that judicial review of an arbitration decision is extremely narrow and deferential.  As the Eleventh Circuit has counseled, "Because arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to the law." *AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007); *see also Ramos-Santiago v. United Parcel Serv.*, 524 F.3d 120, 123 (1st Cir. 2008) (Federal court's review of arbitration decision is "extremely narrow and exceedingly

---

then requires them to reimburse Brice a different amount – $98,187.93 – without any explanation of the figures.  The requirement that the Lees and Landmark *reimburse* Brice "the sum of $98,187.93" applies to "that portion of fees and expenses in excess of the *apportioned costs previously incurred*" by Brice, but requires Brice to demonstrate that such costs have been paid. (emphasis added.)  Thus, the $98,187.93, from wherever it was derived, supposedly is in addition to the $102,044 included in the award of costs against Landmark.

deferential.")  Indeed, arbitration awards wear the cloak of a presumption of correctness.  *See Sullivan Long & Hagerty, Inc. v. Local 559*, 980 F.2d 1424, 1427 (11th Cir. 1993).  Thus, courts routinely confirm arbitration awards.  *Cullen v. Paine, Webber, Jackson, & Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir. 1989).

Under Section 9 of the Federal Arbitration Act ("FAA"), upon petition by a party, the court *must* confirm the arbitrators' award *unless* it is vacated, modified or corrected pursuant to Sections 10 or 11.  *See* 9 U.S.C. §§ 9, 10, 11; *Frazier v. Citifinancial Corp.*, 604 F.3d 1313, 1321 (11th Cir. 2010).  As the Supreme Court recently expressed, the statutory grounds for vacatur and modification provided in Sections 10 and 11 of the FAA afford the exclusive grounds for tampering with an arbitration decision.  *Hall Street Assoc.'s LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008).

In *Hall Street*, the Supreme Court examined the categories under which a court can review an arbitration award pursuant to Sections 10 and 11 and found those categories "address egregious departures from the parties' agreed-upon arbitration" and emphasize "extreme arbitral conduct."  *Id.* at 586 (quoting from §§ 10 and 11:  "corruption," "fraud," "evident partiality," "misconduct," "misbehavior," "exceed[ing] . . . powers," "evident material miscalculation," "evident material mistake," "award[s] upon a matter not submitted").  The Court, applying the old rule of *ejusdem generis*, then determined that the statutory language left no room for contractual expansion of review for "specific instances of outrageous conduct with review for just any legal error.  'Fraud' and a mistake of law are not cut from the same cloth."  552 U.S. at 586.

Following *Hall Street*, the Eleventh Circuit determined that "judicially-created bases for

9

vacatur are no longer valid." *Frazier*, 604 F.3d at 1323.  In doing so, it agreed with the Fifth

Circuit that had held that "'manifest disregard of the law is no longer an independent ground for

vacating arbitration awards under the FAA."  604 F.3d at 1323 (quoting *Citigroup Global*

*Markets Inc. v. Bacon*, 562 F.3d 349, 350, 355 (5th Cir. 2009)).

  This deferential standard of review, however, does not mean that arbitration decisions

cannot be reviewed at all.  Instead, the party seeking to vacate an award must demonstrate one of

the four statutory grounds under the FAA for vacatur of an arbitration award:

> (1) where the award was procured by corruption, fraud or undue
> means;
> (2) where there was evident partiality or corruption in the
> arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to
> postpone the hearing, upon sufficient cause shown, or in refusing
> to hear evidence pertinent and material to the controversy; or of
> any other misbehavior by which the rights of any party have been
> prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly
> executed them that a mutual, final, and definite award upon the
> subject matter submitted was not made.

9 U.S.C. § 10(a).

  Because the Lees challenge the award, they bear the burden of demonstrating that a

circumstance justifying vacatur exists.  *See Data Mtn. Solutions, Inc. v. Giordano*, 680 F. Supp.

2d 110, 120 (D. D.C. 2010).  They challenge the award under 9 U.S.C. § 10(a)(4), which

provides for vacatur of an award when the arbitrators "exceeded their powers."  Specifically, they

argue that the Arbitrators exceeded their powers by exercising jurisdiction over them personally

and by reaching issues they did not agree to submit to arbitration – the claims of unjust

enrichment and piercing the corporate veil that Brice added by amendment in December 2008.

Despite the ambiguities and inconsistencies in the Final Award and the Interim Award, neither

party filed an application to modify or correct the award pursuant to Section 11.[7]  Instead, Brice

seeks confirmation pursuant to Section 9, and the Lees seek vacatur under Section 10.

Analysis

A.      The Arbitrators Did Not Exceed Their Powers

The Lees contend the decision of the arbitrators should be vacated because they exceeded

their authority.  To do so, "they must clear a high hurdle.  It is not enough for petitioners to show

that the panel committed an error – or even a serious error. . . .  It is only when [an] arbitrator

strays from interpretation and application of the agreement and effectively 'dispense[s] his own

brand of industrial justice' that his decision may be unenforceable. . . .  In that situation, an

arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator

'exceed [his] powers,' for the task of an arbitrator is to interpret and enforce a contract, not to

make public policy."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* ___ U.S. ___, 130 S. Ct.

---

[7] Under Section 11, upon application of any party a court may modify or correct an award
in three situations:

> (a) Where there was an evident material miscalculation of figures
> or an evident material mistake in the description of any person,
> thing, or property referred to in the award.
> (b) Where the arbitrators have awarded upon a matter not
> submitted to them, unless it is a matter not affecting the merits of
> the decision upon the matter submitted.
> (c) Where the award is imperfect in matter of form not affecting
> the merits of the controversy.
>
> The order may modify and correct the award, so as to effect the
> intent thereof and promote justice between the parties.

9 U.S.C. § 11.

1758, 1767 (2010) (Citations and internal quotation marks omitted).  Here, the Panel exercised

its authority to interpret and apply the various pleadings and documents whereby the Lees joined

with their company Landmark in demanding that the issues surrounding the Joint Venture be

submitted to arbitration.

　　　When Brice sued Landmark and the Lees for breach of the Joint Venture agreement and

for fraud, the Lees joined with Landmark in moving to compel arbitration of those claims.  (Doc.

6-1.)  The Lees also negotiated the tolling agreement that provided "all parties" to it – including

the Lees – agreed to postpone the matter to arbitration and toll the statute of limitations.  (Doc.

20-5.)  As noted above, the Lees did not challenge – and in fact invoked and consented to – the

jurisdiction of the arbitrators until after Brice filed its amended demand in December 2008.  (*Cf.*

Answer to Demand, Doc. 20-6, and Motion to Dismiss, Doc. 20-8.)  The Panel denied the motion

to dismiss.  (Doc. 20-9.)  In its Interim Award, the Panel again addressed the jurisdictional

challenge raised by the Lees, and held "that the Lees have consented to the Panel's jurisdiction

and determination of the claims relating to them."  (Doc. 1-6.)  In support of its determination,

the Panel cited the "tolling agreement" in which "Brice, Landmark and the Lees agreed to toll the

lawsuit" and "the Lees agreed that all issues in the lawsuit, including the claims against them

individually, would be subject to the arbitration."  The Panel also referred to the Lees' answer to

paragraph 5 of the Demand that stated that the parties agreed to submit the dispute to binding

arbitration; the Lees' response stated "Admitted for purpose of jurisdiction only."  The Panel

found these facts, and others, sufficient to refute the Lees' challenge to its jurisdiction.  This

conclusion grew out of interpretation and application of the agreements between the parties to

arbitrate their disputes: the Joint Venture Agreement generally and the tolling agreement that

specifically applied to the disputes that arose from the Joint Venture Agreement and included claims against the Lees personally.

The Lees again challenge the Panel's authority to reach the claims against them personally and specifically argue that the added claims of unjust enrichment and piercing the corporate veil exceeded the scope of the Panel's authority because they had not consented to include those claims in arbitration. The Lees eventually conceded that the Panel may have had jurisdiction over them to adjudicate the claims contained in the original Demand that repeated the claims Brice asserted in the Jefferson County litigation and that were the subject of the tolling agreement. They argue, however, that they never consented – and in fact, objected – to the addition of the claims of unjust enrichment and piercing the corporate veil. They contend that reaching those claims exceeded the authority of the Panel. They argue that because arbitration is a matter of agreement, they "cannot be forced to arbitrate issues [they] did not agree to arbitrate." *Kahn v. Smith Barney Shearson, Inc.*, 115 F.3d 930, 933 (11th Cir. 1997); see also *Stolt-Neilsen*, 130 S. Ct. at 1773 (noting the "basic precept that arbitration 'is a matter of consent, not coercion.'" (citation omitted)).

The Lees focus their challenge on one paragraph of the Interim Award to argue that the Panel went too far. That paragraph reads:

> Because the Panel finds the Lees personally liable as set forth above, the Panel *does reach* [sic] the issues of *potential* personal liability for unjust enrichment or piercing the Landmark Corporation veil.

(Doc. 1-6, p. 4.) (italics added).

Brice submitted an Order from the Panel dated May 18, 2010, that purported to amend this paragraph of the Interim Award by inserting "not" between "does" and "reach." (Doc. 24-1.)

13

The Respondents objected to the submission of this Order from the Panel.  The court need not discuss the propriety of this purported amendment because it finds that the Interim Award did not address the claims for unjust enrichment or piercing the corporate veil, and if it did, doing so was within the Panel's authority to determine the scope of its jurisdiction.

The entirety of the language in the Interim Award supports a conclusion that the Panel indeed did *not* reach those contested issues.  Instead, the Interim Award specifically found the Lees personally liable for the torts of fraud or fraudulent misrepresentation, then discussed the measure of damages to be awarded "as a result of the Lees [sic] fraud."  (Doc. 1-6, p. 4-5.)  The Panel limited the Lees' "personal liability for their fraud" to the amount of money they removed from Landmark to the potential determent of Brice.  Therefore, the Award, read in context, demonstrates that the Panel did not address the claims of the amended demand that the Lees challenged.

Even if the Panel <u>did</u> reach and consider the amended claims for unjust enrichment and piercing the corporate veil, the court cannot say that doing so it exceeded its power.  The parties agreed that the arbitrators could decide the scope of their own powers.

Under both Eleventh Circuit and Alabama law, the parties' incorporation of the AAA's rules into the Joint Venture Agreement, the tolling agreement and the Lees' answer in arbitration all provide the requisite "clear and unmistakable evidence that the parties agreed to have the arbitrator decide the issue of arbitrability."  *See Terminix Int'l Co. v. Palmer Ranch Ltd.*, 432 F.2d 1327, 1332 (11th Cir. 2005); *CitiFinancial Corp. LLC v. Peoples*, 973 So. 2d 332, 340 (Ala. 2007).  Rule 9 of the AAA's Construction Industry Arbitration Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, *including any objections*

*with respect to the existence, scope or validity of the arbitration agreement*."  (Doc. 20-10.) (emphasis added.)

As the Eleventh Circuit held in *Terminix*, "[b]y incorporating the AAA Rules, including Rule [9], into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."  432 F.2d at 1332.  Similarly, in *Peoples*, the Alabama Supreme Court adopted the Eleventh Circuit's reasoning and held that "an arbitration provision that incorporates rules that provide for the arbitrator to decide issues of arbitrability clearly and unmistakably evidences the parties' intent to arbitrate the scope of the arbitration provision."  973 So. 2d at 340.  Thus, the Panel had the authority to address the Lees' challenge to the scope of its authority to arbitrate the issues before it.

Here, parties explicitly provided that the AAA rules apply, rules that gave the arbitrators the authority to decide the scope of their powers.  This they did when they denied the Lees' challenge to jurisdiction over them and denied their motion to dismiss the amended demand. The court cannot say that the arbitrators "stray[ed] from interpretation and application of the agreement."  *See Stolt-Neilsen*, 130 S. Ct. at 1767.

The agreement to arbitrate in this case included not only the arbitration clause in the Joint Venture Agreement but also the tolling agreement whereby the parties agreed to forego the litigation that Brice filed in favor of arbitration of the entire dispute – including Brice's claims against the Lees.  The joint venture technically was between Brice and Landmark, but the tolling agreement explicitly extended the scope of arbitration to the pending litigation that included the claims against the Lees.  Further amended claims for unjust enrichment and piercing the corporate veil could reasonably be viewed as encompassed within the original claims of fraud as

a method for measuring the damages caused by the Lees' fraud.  At the very least, they certainly grew out of the same transaction, facts and allegations involved in the original Complaint. Therefore, the court should not substitute its view for the Panel's determination of its own jurisdiction.  Because the amended claims reasonably could be viewed as intertwined with the original claims for fraud, and because the Lees repeatedly consented to personal jurisdiction of the claims against them, denying the motion to dismiss involved interpretation and application of the agreement, not reaching beyond it.

Prior to the Supreme Court decision in *Hall Street*, 552 U.S. 576 (2008), and the Eleventh Circuit's interpretation of it in *Frazier*, 604 F.3d 1313 (11th Cir. 2010), the court might have been required to examine the Panel's decision concerning the jurisdictional issue under the standard of "manifest disregard of the law."  However, when the Eleventh Circuit in *Frazier* adopted the Fifth Circuit view that the "categorical language of *Hall Street* compels" the conclusion that "judicially-created bases for vacatur are no longer valid," it rejected the views of the Ninth and Second Circuits.  604 F.3d at 1324.  Those Circuits treat "manifest disregard for the law" as a judicial interpretation of the grounds contained in § 10(a)(4) allowing a district court to vacate an award.  In other words, those Circuits use the manifest disregard for the law standard to measure whether the arbitrators exceeded their powers or "so imperfectly executed them that a mutual, final, and definite award . . . was not made."  9 U.S.C. § 10(a)(4); *see Comedy Club, Inc. v. Improv West Assoc.*, 553 F.3d 1277, 1290 (9th Cir.), cert. denied, ___ U.S. ___, 130 S. Ct. 145 (2009) (treating "manifest disregard for the law" as "shorthand" for § 10(a)(4)).

The Supreme Court recently had the opportunity to re-examine the applicability of the

manifest disregard of the law standard, but refused to do so.  *See Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, ___ U.S. ___, 130 S. Ct. 1758 (2010).  Instead of addressing whether "manifest disregard" survives *Hall Street*, the Court merely assumed *arguendo* that it did, and concluded that the errant decision of the panel met that standard.  *Id.* at 1768 n.3.  Thus, without clear guidance, this court presumes that the Eleventh Circuit did not intend to preserve the "manifest disregard" standard for limited use in evaluating whether an arbitration panel exceeded its authority; *i.e.*, the court presumes the Circuit meant "all" when it declared that "our judicially-created bases for vacatur are no longer valid in light of *Hall Street*."  *Frazier*, 604 F.3d at 1324. This presumption finds strength in the fact that one ground asserted in *Frazier* for vacatur based on exceeding its power was that the Panel made its award in manifest disregard for the law.  The Court rejected that theory as not viable after *Hall Street*.  604 F. 3d at 1322, 1323.

Even if manifest disregard for the law were a basis for evaluating the Panel's determination of its jurisdiction, the Lees offered nothing more to support that argument than that they were not parties to the Joint Venture Agreement.  As previously noted, they were parties in the Alabama state court action.  They joined with Landmark in invoking the arbitration clause of the Joint Venture Agreement when they filed a motion to dismiss that action and again when they filed a motion to compel arbitration.  The Joint Venture Agreement adopted the AAA rules, including the rule that gave arbitrators the power to determine the scope of the arbitration and what issues are arbitrable.  Having invoked the Joint Venture Agreement as a defense to litigation, and having submitted personally to the jurisdiction of AAA arbitration (see Doc. 20-6), the Lees should not be shocked that the Panel found they had consented to the Panel's jurisdiction over all the claims against them arising out of the Joint Venture Agreement.  Given

17

these facts, the court cannot say that the Panel's decision was in manifest disregard for the law.

The court's responsibility does not extend to determining whether the Panel's decision about its authority over the claims against the Lees was correct. The FAA does not grant a court the full scope of review of an arbitration decision. Instead, the court must confirm the arbitration award unless the party opposing it establishes a ground for vacatur or modification set forth in Section 10 or Section 11. Those statutory grounds are akin to "specific instances of outrageous conduct" such that a mistake of law does not support vacatur. *See Hall Street*, 552 U.S. at 586.

The Panel's decision as to its jurisdiction over the claims against the Lees, therefore, deserves the same deference owed by the court to other arbitration decisions. Because the parties agreed to have the issue of arbitrability of issues decided by the arbitrator, "then the court's standard for reviewing the arbitrator's decision [about arbitrability] should not differ from the standard courts apply when they review other matters that parties have agreed to arbitrate. . . . That is to say, the court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (citations omitted). The court finds no reason to depart from the presumption of correctness due the Panel's determination of the scope of its jurisdiction. *See Sullivan Long & Hagerty, Inc. v. Local 559*, 980 F.2d 1424, 1427 (11th Cir. 1993).

B.    No Need to Stay Confirmation of the Award

The Respondents argue alternatively that they are entitled to a stay of the confirmation of the arbitration award pending resolution of Brice's lawsuit against the architects. Because the arbitrators awarded both Landmark and the Lees a set off or credit in the amount of 35% of any recovery in that litigation, they argue that their liability to Brice is indeterminate. In support of

their position, they rely on *Hewlett-Packard Co. v. Berg*, 61 F.3d 101 (1st Cir. 1995). *Hewlett-Packard*, however, does not support a stay in this case for several reasons.

Most obviously, *Hewlett-Packard*, decided by the First Circuit, is not controlling authority. It is, however, persuasive authority, but instead supports the *denial* of the stay in this case. The district court in *Hewlett-Packard* had found that it was "without power to stay the confirmation proceeding" during the pendency of a second arbitration that could reduce the amount of Hewlett Packard's liability. 61 F.3d at 103. The arbitrators had awarded the directors of a bankrupt corporation $700,000 for H-P's wrongful termination of a 1984 distributorship agreement, but granted H-P a $10,000 offset for amounts still owed by the bankrupt company to H-P. It had also sought $207,000 owed under an earlier 1982 contract, but the arbitrators refused to reach that issue because they determined it was outside the scope of the Terms of Reference the arbitrators issued at the outset. 61 F.3d at 103.

H-P paid the award minus the $207,000 it unilaterally took as a set off, and sought a second arbitration of the 1982 contract. When the directors of the bankrupt company sued to confirm the full arbitration award, H-P moved to stay confirmation, pending the outcome of the second arbitration. The district court denied the motion to stay on the grounds that it lacked authority to stay and, therefore, confirmed the final award without a set off. 61 F.3d at 103.

On appeal, the First Circuit found that the district court did, in fact, have power to issue a stay of confirmation for prudential grounds. The power of a court to stay proceedings rises from its inherent power to control disposition of cases. 61 F.3d at 105 (quoting *Lande's v. No. Am. Co.*, 299 U. S. 248, 254 (1936)). Nothing in the applicable arbitration statute precluded such authority, and the court noted that under the FAA, "courts routinely grant stays in such cases for

prudential reasons not listed in sections 10 and 11 [of the FAA]." *Id.* at 106.  The court

remanded the case to the district court to determine whether to issue the stay.

This court recognizes it has the *power* to exercise discretion to stay confirmation of the

award in this case.  However, it finds that "prudential reasons" caution against such a stay.  The

"prudential argument" asserted by H-P in support of a stay works in reverse here as good reason

*not* to grant a stay.  As the First Circuit noted:

> If the existing award were confirmed in full and reduced to
> judgment, Hewlett-Packard would have to pay the full award to the
> defendants as successors-in-interest of an insolvent company.  If in
> due course Hewlett-Packard then prevailed on its claims against
> the insolvent company on a closely related transaction, it would
> have no assurance of collecting anything.

61 F.3d at 105.

Here, if confirmation were stayed in the remote hope that the action against the architects

netted a substantial recovery that might reduce the Respondents' liability, Brice could face the

very real difficulty of collecting anything on its Arbitration Award against the Respondents.  As

noted above, the architects' action is in its infancy and no assurances exist that Brice will

succeed.  During the interim, the Respondents offer no proof that they will not continue to

deplete the assets of Landmark to the detriment of Brice.  On the other hand, the court is aware of

no reason to doubt Brice's ability to refund to the Respondents 35% of any recovery it *might*

eventually receive from the architects.  Thus, the "prudential reasons" in this case argue against a

stay.

As the First Circuit in *Hewlett-Packard* commented,

> Of course, a stay of confirmation should not be lightly
> granted. . . .  But the risk that the power to stay could be abused by
> disgruntled litigants – real though that risk is, . . . argues more for a

cautious and prudent exercise of the power than for its elimination.

61 F.3d at 106 (citation omitted).

This case presents a clear picture of "disgruntled litigants" seeking to abuse the power to stay, and indeed seeking to thwart what should have been a more prompt resolution of its "overwhelming" responsibility to honor its obligations under the Joint Venture Agreement. (*See* Interim Award, doc. 1-6, p. 2). Instead of granting a stay, at the hearing the court instructed counsel to reach an agreement to ensure sure that Landmark and the Lees can recover any future set off to which they may be entitled. As a result, they have agreed upon an escrow arrangement that meets the interests of both sides without the abuse that a stay would work in this case.

Brice has waited long enough for the money Landmark owed it as a result of the Joint Venture Agreement the Lees invited Brice to join. The waiting should now end.

A separate order will be entered contemporaneously.

DONE and ORDERED this 30th day of September 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE